**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**Lafayette Division**

| | |
|---|---|
| **ARIZONA TURBINE TECHNOLOGY, Inc.** | **Docket No. 6:17-cv-386** |
| **ADVANCED TURBINE SERVICES, LLC** | **Judge ____________________________** |
| **DAVID CROWE** | **Mag. Judge ________________________** |
| **KENNETH BRACCIO** **Plaintiffs** | |
| **Versus** | |
| **TURBINE POWERED TECHNOLOGY, LLC** | |
| **MARINE TURBINE TECHNOLOGIES, LLC** | |
| **TED MCINTYRE, II** **Defendants** | |

**COMPLAINT FOR DAMAGES**

Plaintiffs, Arizona Turbine Technology, Inc., Advanced Turbine Services, LLC, David Crowe, and Kenneth Braccio bring this action based upon personal knowledge as to the facts, investigation of counsel, and upon information and belief as to all matters, and allege as follows:

## I. Nature of the Case and Introductory Statement

1. This action for damages stems from false and unlawful communications made by Ted McIntyre, II (hereinafter "McIntyre") regarding the business operations of Arizona Turbine Technology, Inc. (hereinafter "Arizona Turbine"), Advanced Turbine Services, LLC (hereinafter "ATS"), David Crowe, and Kenneth Braccio. McIntyre knowingly made false and misleading

statements to the customers of Arizona Turbine and ATS to damage Arizona Turbine's relationship with its current and potential customers, and in order to gain a competitive advantage for two competing companies he owns, Turbine Powered Technology, LLC (hereinafter "TPT"), and Marine Turbine Technologies, LLC (hereinafter "MTT"). Namely, on multiple occasions in 2016 and in 2017 McIntyre communicated to Arizona Turbine's customers and potential customers that Arizona Turbine's business operations infringed on a patent owned by TPT, and otherwise communicated that Arizona Turbine's business practices were unlawful. On numerous other occasions in the same period, McIntyre made similar communications regarding David Crowe and Kenneth Braccio personally, as well as ATS, an affiliated company. These communications were made by McIntyre himself, and by agents working on McIntyre's behalf. At all times these communications lacked factual support, and those making such communications knew or should have known them to be lacking in support. This complaint will detail how all such communications were made, and how they were made with the intent of damaging Arizona Turbine's reputation and to prevent Arizona Turbine from gaining valuable contracts. Further, this complaint will show these communications resulted in actual reputational damage to Arizona Turbine, David Crowe, Kenneth Braccio, and ATS. Further, this complaint will show that these unlawful communications have prevented Arizona Turbine from gaining valuable contracts, and otherwise caused actual economic and non-economic damages to Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. By this Complaint, Arizona Turbine now seeks an award of damages pursuant to the various state laws plead herein.

## II. Jurisdiction and Parties

2. Plaintiff, Arizona Turbine Technology, Inc., is an Arizona business corporation domiciled in Tucson, Arizona, and with its principal place of business in Tucson, Arizona.

3. Plaintiff, David Crowe ("Crowe") is the CEO of Arizona Turbine and is domiciled in Tucson Arizona.

4 Advanced Turbine Services, LLC is a limited liability company domiciled in Wallingford, Connecticut, and with its principal place of business in Meriden, Connecticut.

5. Plaintiff, Kenneth Braccio ("Braccio") is the owner of Advanced Turbine Services, LLC, and is domiciled in Phoenix, Arizona.

6. Made Defendant herein is Ted McIntyre, II ("McIntyre") a person of full age of majority, domiciled in Franklin, Louisiana.

7. Made Defendant herein is Turbine Powered Technology, LLC, ("TPT") a Louisiana limited liability company with its principal place of business in Franklin, Louisiana.

8. Made Defendant herein is Marine Turbine Technologies, LLC, ("MTT") a Louisiana limited liability company wholly owned by McIntyre, and with its principal place of business in Franklin, Louisiana.

9. Subject matter jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional minimum.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2).

## III. Factual Background

11. Since 1973 or before, various firms have repurposed turbine engines originally installed in military helicopters to supply the high levels of horsepower necessary to drive hydraulic fracturing pumps in America's shale oil & gas production industry.

12. Turbine-powered hyrdo-fracturing units are smaller, cleaner, more efficient, and cheaper than the hydro-fracturing power units that preceded their use in the industry. Supplying turbine-

powered hydro-fracturing engines to shale oil & gas wells in the U.S. and around the world amounts to a very profitable business.

13. From 2011 to 2013, Greenfield Energy Services, Inc., of Lafayette, ("Green Field") quickly became one of the leading companies repurposing military helicopter turbine engines for use in hydro-fracturing. During these years, Green Field operated a joint-venture with MTT, and during those years both companies owned TPT. This joint venture was concentrated in the development and supply of turbine-powered hydro-fracturing machines to shale oil and gas producers in the U.S.

14. Green Field failed spectacularly in 2013, after its then-CEO Mike Moreno used a web of affiliated companies under his control to strip Green Field of its most valuable assets and walk away from obligations to fund the company. This scheme ended in a Chapter 7 bankruptcy in Delaware, and various litigations concerning Moreno, Greenfield's creditors, and the bankruptcy trustee proceed today in various forums in Lafayette, Delaware, and elsewhere. *See, In re Greenfield Energy Services, Inc. et al* 13-12783, Bankr. D. Del.

15. In 2011 David Crowe was the CEO of Tucson Embedded Systems, Inc. (hereinafter "TES"). Green Field sought out Crowe's expertise to solve problems TPT/MTT had in controlling their turbines. Specifically, GFES needed Crowe's assistance to enable the turbines to reliably run on natural gas.

16. In 2011 at the direction of Green Field, McIntyre issued a purchase order to ATS to purchase 25 turbine control units from TES.17. In 2013 Green Field contracted with TES to supply controls for TPT/MTT generators.

18. In October 2013, TPT/MTT issued a purchase order to TES for 12 more generators controls for the newly acquired Green Field generators.

19. In January 2014, TES sued TPT for non-payment on this supply-control contract with TPT. See, *Tucson Embedded Systems, Inc. v. Turbine Powered Technology, LLC*, District of Arizona, No. 14-01868.[1]

20. Since the collapse of Green Field, MTT and TPT have continued to operate in the market supplying various goods and services related to turbine-power hydro-fracturing power sources.

21. In 2014, Crowe left TES and founded Arizona Turbine to continue the development and improvement of turbine-powered sources for industrial applications, and to compete in that market. Since 2014, Arizona Turbine has brought forth new applications and products in the industrial turbine market.

**The ‘078 Patent**

22. In 2013, TES applied for U.S. Patent No. 9,429,078 (“the ‘078 Patent”), and was eventually awarded that patent. That patent is for a “multi-compatible digital engine controller,” which entails the control of multiple variants of gas turbine engines without requiring a change in software and configuration data and/or a re-boot.

23. David Crowe was indispensable in the development of that patent application and the systems behind it, and is therefore very familiar with the limits of that patent.

24. Some of the limits of the ‘078 patent are as follows:

a. The ‘078 Patent does not apply to the Industrial Digital Engine Controller system, (known as the “IDEC”), developed by TES in 2012. The technology described by the ‘078 patent receives engine-specific data to determine the engine output, and was designed as a replacement to the IDEC. The IDEC was in operation 22 months prior to the application which led to the ‘078 patent.

b. The ‘078 patent does not apply to frac-pump controllers integrated with turbine controllers.

[1] TPT filed a counter-claim against TES alleging violation of the Arizona Trade Secrets Act, and such claim is similar in its factual allegations as the statements made by TPT against Arizona Turbine and described in this complaint. TPT’s Arizona Trade Secrets Act counter-claim was dismissed on summary judgment on 4/11/2016. See, *TES v. TPT,* No. 14-01868, Doc. No. 138.

c. The ‘078 patent does not apply to generator controllers integrated with turbine controllers.

d. The ‘078 patent does not apply to technologies that control frac-pumps.

e. The ‘078 patent describes a product never built or developed by TES.

f. The ‘078 patent only applies to digital engine controls that enable compatibility with multiple gas turbine engine variants.

25. In October 2016, as part of the settlement of the Arizona lawsuit between TES and TPT, TES assigned 51% of the ownership of the ‘078 Patent to TPT.

26. At all relevant times, the limitations and specifications of the ‘078 patent were known, or should have been known, to McIntyre, TPT, and MTT.

**<u>The Development of Arizona Turbine’s Business</u>**

27. In 2016, Arizona Turbine had the opportunity to make several large, publicly traded companies valuable customers and/or enterprise partners. These companies include: EcoStim Energy Solutions, Inc., Vericor, Inc., and Honeywell International, Inc. These opportunities also represented opportunities for Advance Turbine Systems, Inc. (“ATS”) to provide materials and other items necessary for Arizona Turbine to fulfill its contracts. ATS is largely owned and controlled by plaintiff Braccio

28. EcoStim Energy Solutions, Inc. (“EcoStim”) is a well stimulation and completion services company based in Houston. At all material times, EcoStim was a potential customer for products and services offered by Arizona Turbine.

29. On or about June 2015, EcoStim and Arizona Turbine engaged in communications and negotiations toward finalizing contracts for Arizona Turbine to provide services and equipment

to EcoStim. These communications and negotiations included the opportunity for Arizona Turbine to refurbish EcoStim's frac-pumps and frac-spreads.

30. Vericor Power Systems, Inc. ("Vericor") is a manufacturer of aeroderivative marine and industrial gas turbines based in Alpharetta, Georgia. At all material times, Vericor was and continues to be a potential customer for products and services offered by Arizona Turbine, and otherwise was a potential valuable source of business development for Arizona Turbine.

31. On or about October 2016, Vericor and Arizona Turbine engaged in communications and negotiations toward finalizing contracts wherein Arizona Turbine would partner with Vericor in the development of certain frac-pump technology and/or intellectual property.

32. Honeywell International, Inc. ("Honeywell") is a large multinational conglomerate, and a major U.S. Department of Defense contractor. At all material times, Honeywell International, Inc., or its subsidiaries, was a valuable source of potential business development for Arizona Turbine.

33. As of the end of 2016, Arizona Turbine was engaged in the industrialization of the AGT-1500 turbine engine for use in the M1 Abrams series of tanks, the U.S. Army's main battle tank. Honeywell manufactures the AGT-1500, and holds the contract to refurbish some 3000 engines for the Department of Defense. As of November, 2016, Honeywell and Arizona turbine were engaged in communications and negotiations regarding Arizona Turbine contracting with Honeywell to provide valuable supplies and services in this project.

**Arizona Turbine's Products are Significantly Distinct from the Claims of the '078 Patent**

34. All the foregoing-described business opportunities revolved around Arizona Turbine integrating turbines into other products and/or machines, including its iTxc technology, and/or its TFM technology, as described in more detail in the following paragraphs.

35. None of the foregoing-described business opportunities implicated the ‘078 patent in any way. The ‘078 patent concerns a self-configuring turbine controller. The design for Arizona Turbine’s turbine controller, “the iTxc”, which was offered in conjunction with all of the foregoing-described business opportunities, is configured around turbine-control theory that pre-dates the ‘078 patent by several decades.

36. The claims of the ‘078 are limited to digital engine controllers (“DEC”) that enable compatibility with multiple different gas turbine engine variants. The claims of the ‘078 patent is not directed to any DEC which does not enable this multi-compatibility.

37. The claims of the ‘078 patent is limited to DECs that receive data from a gas turbine engine, and which respond to that data to improve control performance.

38. No facts were known to McIntyre to support the reasonable belief that Arizona Turbine, ATS, Crowe, or Braccio directly or indirectly infringed on any claim of the ‘078 patent.

39. The following paragraphs describe how the products marketed by Arizona Turbine, in conjunction with Crowe, Braccio, and/or ATS, do not in any way infringe on the ‘078 patent, either directly or indirectly.

40. Arizona Turbine markets a single product that incorporates a DEC: the iTxc. The iTxc does not incorporate a DEC compatible with multiple variants of gas turbine engines.

41. The iTxc has no need for, and does not receive, engine-specific data, as its DEC is not multi-compatible and cannot be used with multiple variants of gas turbine engines.

42. The iTxc technology is limited to one engine and that engine’s parameters, which is hard-coded into its DEC software. The iTxc DEC is not responsive to engine-specific data because it is designed to receive none. The iTxc is not capable of controlling a gas turbine engine it is not pre-programmed to manage.

43. Besides the iTxc, Arizona Turbine's other principle product is a software program known as "Turbine Frac Manager," a/k/a "TFM."

44. The claims of the '078 patent are not present in the TFM software in the following ways:

a) TFM is not a digital engine controller, nor a physical device or implement of hardware, and it is not capable of controlling a gas turbine engine.

b) TFM has no interface whatsoever with any gas turbine engine.

c) TFM receives no information from, or relevant to, the operation of a gas turbine engine.

d) TFM does not control or interact with any gas turbine engine.

e) TFM does not function as a digital engine controller.

45. At no time since TPT acquired and interest in the '078 patent, did Arizona Turbine, or any of the other plaintiffs herein, market any other product that could reasonably be believed to infringe on the '078 patent.

**McIntyre Seeks to Eliminate the Threat of Competition Posed by the Plaintiffs**

46. McIntyre's main business is MTT, which, like Arizona Turbine, designs, engineers, and manufactures gas powered turbines for various industrial applications, but primarily in the oil & gas industry.

47. TPT/MTT, as a de facto joint venture, competes directly against Arizona Turbine for valuable contracts with EcoStim, Inc. and other customers.

48. The industrial products and applications offered by Arizona Turbine are qualitatively better and more competitive than those offered by MMT, because of the superior knowledge, skill, and technical acumen brought to Arizona Turbine by Crowe.

49. The growth and future success of Arizona Turbine represents a direct threat to MTT/TPT and McIntyre. EcoStim, Inc. and other companies have indicated their preference to contract

with Arizona Turbine rather than MTT/TPT because of Arizona Turbine's more competitive price and superior reputation for quality.

50. Because of this competitive threat, McIntyre sought to drive business away from Arizona Turbine by communicating to Arizona Turbine's customers that Arizona Turbine had violated TPT's patent, and that doing business with Arizona Turbine would expose those customers to litigation.

51. On November 10th, 2016, McIntyre sent an email to the President and CEO of EcoStim. That correspondence alleges the following:

a. "David Crowe, Ken Braccio and their related companies are in direct violation of [the '078] patent.

b. Crowe and Braccio misrepresented ownership of technology owned by TPT.

c. AZ Tech and ATS are violating a restraining order by doing any work for EcoStim.

That email is attached to this complaint as Exhibit "A."

52. On November 15th, 2016, Rick Clinton, the CEO of Vericor sent a message to Crowe reading as follows: "Information brought to my attention suggests there is some dispute regarding the design rights of the engine control system being used on your system. I'd prefer to keep Vericor out of this sticky subject for now. Hope you can understand." (Attached as Exhibit "B"). On information and belief, Mr. Clinton's perceptions regarding Arizona Turbine's rights to its designs were formed by false and misleading information disseminated by McIntyre.

53. On November 17th, 2016, McIntyre again emailed the president and CEO of EcoStim to inform them that their work with Arizona Turbine et al. "will most certainly effect share prices and the future of Ecostim's operating with regards to our patented control technology." That email is attached hereto as Exhibit "C."

54. On November 30th, 2016, an officer of EcoStim wrote to Crowe, regarding McIntyre's November 17th email, "this is very disturbing. Your ongoing dispute with Ted [McIntyre] is impacting our ability to raise capital. Please resolve as quickly as possible." That email is attached hereto as Exhibit "D."

55. On various occasions during this time period, McIntyre called into EcoStim shareholder meetings to repeat these threats about his patent claims. On more than one occasion, McIntyre expressly indicated to EcoStim that he would not press any patent claims against Arizona Turbine if EcoStim contracted with TPT/MTT rather than Arizona Turbine.

56. On January 13th, 2017, Greg Mier, acting as patent counsel for TPT sent a demand letter to EcoStim that contained the following vague and unsupported allegations:

a. That the '078 patent relates "to digital engine controllers that are compatible with turbine engines."

b. "We have reason to believe that [EcoStim] have used, sold, offered for sale, and/or licensed digital engine controllers in your line of business. We also have reason to believe that these activities constitute infringement of the '078 patent."

That correspondence is attached hereto as Exhibit "E".

57. On January 17th, 2017, McIntyre again emailed officers of EcoStim, forwarding a temporary restraining order from the 16th Judicial District Court in St. Mary Parish that concerns contract allegations, and falsely stating that such restraining order is regarding "AZTTECH, ATS and the related parties involved with regards to our patented and proprietary IP." That correspondence is attached hereto as Exhibit "F".

58. On information and belief, during this same period, from November, 2016 through January, 2017, McIntyre or his agents made similar allegations regarding patent infringement to Thomas Hart, the Vice President of Honeywell International's defense and space division, in Phoenix, Arizona. As a direct result of these communications to Honeywell, Arizona Turbine

was not awarded a contract to refurbish the Army's M-1 tank turbines, as described in paragraph 33, *supra*.

59. McIntyre, TPT, and/or MTT did not have any good faith basis for making the communications to Arizona Turbine's customers as described above. At no time did McIntyre, Mier, TPT, and/or MTT possess any information to support their allegations that Arizona Turbine, ATS, Crowe, and/or Braccio had violated, or were likely to violate the '078 Patent, or that the plaintiffs were otherwise unlawfully making use of the any intellectual property owned by any of the defendants.

## IV. Causes of Action

60. The foregoing factual allegations are re-plead and incorporated hereto as if written *in extenso*.

61. The foregoing described communications were false, made to the customers of Arizona Turbine and ATS in bad faith, and for the purpose of destroying Arizona Turbine's business relationship with these customers. Alternatively, each of these communications was made with a reckless disregard for the truth, and McIntyre knew or should have known that such communications would result in injury to Arizona Turbine, ATS, Crowe, and Braccio.

62. As a direct result of the communications from McIntyre and his agents as detailed herein, David Crowe and Kenneth Braccio have suffered general and specific damages, including mental anguish and reputational damage.

63. As a direct result of the communications from McIntyre and his agents as detailed herein, Arizona Turbine has suffered loss of revenue and other direct economic damages. Specifically, Arizona Turbine has not been awarded contracts with EcoStim, Vericor, Honeywell, and others,

and has otherwise suffered business loss because of McIntyre's communications as described herein.

64. As a direct result of the communications from McIntyre and his agents as described herein, ATS has been deprived of the business opportunity to participate in contracts with Arizona Turbine, and from otherwise deriving benefits therefrom.

**Count One: La. R.S. 51:1409, The Louisiana Unfair Trade Practices Act**

65. McIntyre's conduct as described above constitutes unfair trade practices within the meaning of La. R.S. 51:1409, the Louisiana Unfair Trade Practices Act.

66. A private right of action under the Louisiana Unfair Trade Practices and Consumer Protection Law extends to business competitors, consumers, and any other persons who assert a loss of money or property as a result of the use or employment by another person of an unfair or deceptive methods, acts, or practices. *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.* So.3d 1053 (La. 4/23/10).

67. The elements of a cause of action under La. R.S. 51:1409 are: (1) an unfair or deceptive trade practice; (2) that impacts a consumer, business competitor, or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss. *Who Dat Yat, LLC v. Who Dat? Inc.*, 2011 WL 39043, at *3 (E.D. La. 2011).

68. McIntyre's communications, as described above, have been unfair and deceptive, have impacted Arizona Turbine and ATS, and have caused ascertainable loss to Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. Therefore, McIntyre should be made liable for damages, court costs, and attorney's fees under La. R.S. 51:1409.

**Count Two: Defamation Under Louisiana Law**

69. McIntyre's conduct as described in the foregoing paragraphs constitutes defamation under Louisiana Law: McIntyre made false statements of facts to third parties for the purpose of damaging the reputation of Arizona Turbine, ATS, David Crowe, and Kenneth Braccio, and injuring Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. Alternatively, McIntyre made false statements of facts that he knew or should have known to be false, and which he knew or should have known would result in injuries to Crower, Braccio, Arizona Turbine and ATS.

**Count Three: Unfair Competition Under Arizona Law**

**70.** McIntyre's conduct, as described in the foregoing paragraphs, constitutes unfair competition under the common law of the State of Arizona, and in violation of A.R.S. § 44-1522.

**Count Four: Bad Faith Patent Infringement Claim Under Arizona Law**

71. McIntyre's conduct, as described in the foregoing paragraphs, constitutes unfair and deceptive trade practices, in violation of A.R.S. § 44-1421 *et seq.*, the Arizona Patent Troll Prevention Act. As described in the foregoing paragraphs, McIntyre acted in bad faith in asserting patent infringement against Arizona Turbine, ATS, David Crowe, and Kenneth Braccio, and in communicating the same to EcoStim, Vericor, Honeywell, and others.

**Count Five: Tortious Interference with Business Expectancy Under Arizona Law**

72. McIntyre's conduct as detailed above constitutes tortious interference with business expectancy under Arizona Law. Arizona Turbine and ATS had valid business expectancy with EcoStim, Vericor, Honeywell, and others. McIntyre, MTT, and TPT had knowledge of the relationship or expectancy on the part of Arizona Turbine, ATS, and the other companies as described herein. McIntyre's conduct caused a termination of the relationship or expectancy

between Arizona Turbine, ATS, and the other companies as described herein, and which has resulted in damage to Arizona Turbine and ATS. McIntyre's actions were both intentional and improper. *See, ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.* F.Supp.2d 905 (D. Arizona, 2012).

**Count Six: Defamation Under Arizona Law**

73. McIntyre's conduct, and that of his agents, as detailed above constitutes defamation under Arizona Law, because it represents a tortious invasion of the interests and reputation of Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. McIntyre's bad faith allegations that Arizona Turbine, ATS, Crowe and Braccio were in violation of the '078 Patent was knowingly false, and defames the plaintiffs. McIntyre acted in reckless disregard of these matters, and/or acted negligently in failing to ascertain the truth with respect to this patent claim. *Yetman v. English*, 811 P.2d 323 (AZ, 1991).

**McIntyre, TPT, and MTT Should Be Jointly Liable for Damages**

74. At all material times, McIntyre acted in cooperation and coordination with TPT and MTT to carry out the injurious acts described herein, and did so for the mutual benefit of TPT, MMT, and himself. TPT and MTT otherwise actively aided and abetted McIntyre's conduct as described herein by allowing McIntyre to carry out the acts described herein in the name of TPT and MTT, materially supported McIntyre's unlawful activities described herein by allowing the use the offices and communications systems of MTT and TPT, and otherwise facilitated McIntyre's conduct. Accordingly, TPT and MTT should be jointly liable with McIntyre for all damages, pursuant to the laws of Louisiana and Arizona.

**VII. Request for Jury Trial**

75. Plaintiff prays that all claims herein be adjudicated in a trial by jury.

**VIII. Prayer of Relief**

76. Wherefore, Plaintiffs pray that Defendants be cited and made to answer this complaint. Plaintiffs pray that after due proceedings are held a money judgment enter in favor of Plaintiffs and against Defendants for general damages, actual economic damages, and attorneys' fees. Plaintiff pray for all such further relief justified in the premises.

Respectfully submitted,

**Young, Cotter & Meade**

/s/ Adam G. Young, 30124
315 South College Rd., Ste. 163
Lafayette, Louisiana 70503
337-261-8800
337-234-3133 (fax)
adam@ycmlawfirm.com

John Alden Meade, 29975
Laura N. Buck, 34467
909 Poydras St., Suite 1600
New Orleans, Louisiana 70112
504-799-3100
504-814-1487 (fax)
jameade@ycmlawfirm.com
laura@ycmlawfirm.com